## D. L. SPEARMAN V. THE STATE.

*No. 612.    Decided March 26.*

1. **Indictment—Motion to Quash—Compelling Defendant to Testify—Issue Joined.**—On a trial for murder, defendant filed a sworn motion to quash the indictment, upon the ground, that while under arrest he was compelled by the officers, against his will, to appear before the grand jury and give evidence concerning the case against him. There was no issue joined upon this motion, and no evidence with regard to it. *Held*, the matter is not presented so that it can be considered, and moreover, the matter stated is not one of the statutory grounds for setting aside or quashing an indictment. Code Crim. Proc.; art. 523.

2. **Evidence—Acts, Declarations of, and Conversation with, Defendant.**—Where the defendant has drawn out parts of a conversation he had with a witness, it is permissible for the State to prove all that occurred, being parts of the same act and conversation.

3. **Same—Discovery of Fruits of the Crime Through Statements Made by Defendant.**—Evidence of statements made by a defendant under arrest are admissible against him whenever such statements afford the means and lead to the discovery of the fruits of the crime.

4. **Murder—Principals and Accomplices—Refused Instructions.**—On a trial for murder, where the evidence showed that defendant, if guilty at all, was guilty as a principal, *Held*, that requested instructions upon the law of accomplices, not being pertinent to the issues in the case, were properly refused.

5. **Fact Case—Circumstantial Evidence—Murder of the First Degree.**—See evidence which, though circumstantial, is held by the court amply sufficient to support a conviction for murder of the first degree, with the death penalty.

APPEAL from the District Court of Harrison. Tried below before Hon. W. J. GRAHAM.

This appeal is from a conviction for murder of the first degree, with the penalty assessed at death.

The following succinct statement of the case, which is substantially correct, is taken from the brief on file for the State:

On June 18, 1894, defendant D. L. Spearman, left his house in a buggy about 4 a. m. The deceased, Horace Stephens, left his house about 4:30. They lived in houses adjoining each other, and about five and one-half miles northeast of Marshall. This was the last seen of Horace Stephens in life. The defendant was next seen a few minutes after 6 o'clock at J. N. Henderson's, about six miles north of Marshall, on the Jefferson road, but was still in his buggy, and had a bundle covered up with a bed quilt in the buggy with him. He was next seen somewhere between 6 and 8 o'clock in the morning at William Durkee's, about three and one-half miles northwest of J. N. Henderson's. Sometime during that morning he came to Marshall and purchased a sack of meal, and also purchased a box of black paint from Lake & Co. When next seen he was about three miles north of town, on the Jefferson road, going in the direction of his own house. After he had returned home he told Mitchell Turner that Horace Stephens was gone; had run off with a girl; that the girl had two or three bad brothers, and they would kill him if they caught him. He repeated this story

to Mitchell Turner twice on that day.    Horace Stephens not reporting for duty on the section on which he worked, inquiry was made for him, and the section house keys were wanted, but neither could be found. On the 26th of June the body of Horace Stephens was found in a pool of water about one and three-fourths mile from the defendant's house, and in the direction of Marshall.    Buggy tracks were found at the pool, and were traced off from there, and it was established, by reason of the marks on the timber and the marks on the ground, that it was the defendant's phaeton buggy that made the tracks.    The defendant was arrested twice.    After the second arrest, he told that he had put the bundle that he had with him in a creek between Henderson's and Durkee's.    He claimed that John Fagan had given him the bundle, and told him to make away with it.    John Fagan was arrested upon this statement, and put in jail.    The defendant was taken out at the time Fagan was put in, and A. S. Curtis, after duly cautioning the defendant, talked with him, and defendant admitted to him that he bought the black paint to paint the blood-stains out of his buggy. But though he claimed that John Fagan had borrowed his buggy on the 17th of June, that Fagan did not tell him what he wanted with it, and that he had not seen John Fagan from the time that he loaned him his buggy up to the time that John Fagan was put in jail.    He did not answer the direct pointed question Curtis asked him, that, "If that is so, when was it that Fagan told you to make way with the clothes?"    On the next day after this conversation, the creek in which the clothes were said to have been thrown was seined, and a hat and shoe were found that were identified as the property of the deceased, and two pieces of a torn bed quilt identified as being a quilt that defendant used to cover his buggy with while under the buggy shelter, which quilt had disappeared about this time.    After the defendant was released from the first arrest, and before he was arrested the second time, he had his horse shod.    The rope with which the rocks were tied to the body of the deceased was shown circumstantially to be the rope of the defendant.

Through inadvertence of the justice of the peace no post-mortem examination was had.    On the 19th of August the district attorney had the body exhumed, and the skull and neck bones were taken out and examined by Drs. Rosborough and Taylor.    These physicians testified, that the third vertebra was fractured, and that there was a hole, which they thought was made by a bullet, which extended up from the base of the skull and came out at a point near the nose and left eye.

The only motive shown for the killing by the defendant was, that he desired to get rid of deceased, so that he could live with his (deceased's) wife.

*Lane & Pope,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was tried in the District Court of Harrison County under an indictment charging him with the murder of one Horace Stephens. He was found guilty by the jury of murder in the first degree, and his punishment assessed at death, and from said conviction he prosecutes this appeal.

The appellant filed and presented a motion to set aside and quash the indictment in this case, on the ground, as he alleges, that defendant was compelled against his own will, and while under arrest, by officers of the law, to appear before the grand jury and make a statement and give evidence of and concerning the offense with which he stands charged by indictment. The defendant swears to the motion, but no issue appears to have been joined on it, and no facts elicited in regard to same, if, indeed, such a course of procedure as the motion contemplated could have been had under our statutes. Article 523, Code of Criminal Procedure, authorizes a motion to set aside an indictment upon two grounds only, and that suggested by appellant is not one of the grounds named. Williams v. The State, 20 Texas Crim. App., 357.

It appears, that when the witness Curtis was on the stand he was asked by the State's counsel to state what the defendant said to him in a conversation while he was under arrest. The defendant objected, on the ground that defendant had not been warned. The witness stated, that while he and J. W. Ethridge were in the sheriff's office, the defendant came in there, and the witness (Curtis) said to him, "Spearman, old fellow, we are getting pretty close to you. We have got some new evidence against you." That then Ethridge threw the rope that came off the dead body of deceased on the table in front of defendant, and asked him if he had ever seen that rope before. and that defendant looked out of the window, and dropped his head, and said nothing, and looked hacked. The bill of exceptions shows, that the same conversation and incidents had been drawn out of the witness Ethridge by the defendant over the State's objections, and that Ethridge's conversation with defendant was admissible, even if the State had offered it, because, on account of statements then made by defendant, the clothing deceased had on when he was killed was found by Ethridge where they had been concealed, in a pond. This was the version of the witness Curtis of the same conversation and conduct of defendant, as drawn out by the defendant from the witness Ethridge, and was admissible as showing by another witness all that then occurred, being a part of the same act and conversation. Code Crim. Proc., art. 751; Greene v. The State, 17 Texas Crim. App., 395. Regardless of any warning to defendant, this evidence has been rendered admissible, because the clothing of deceased had been found in pursuance of the statement then made by defendant. Jackson v. The State, 29 Texas Crim. App., 460. It will be further observed, that the exception was taken to what the defendant may have said at the time, and not to what he did, though if such exception had been

taken, in our opinion it would have been admissible, made so by the testimony of Ethridge as to what defendant did, and how he appeared, as this same evidence had been adduced by defendant from Ethridge.

The court gave a very full and explicit charge, defining who were principals in the offense; and although the evidence was circumstantial, it showed, if defendant was guilty at all, it was as a principal, and not as an accomplice or as an accessory, and therefore the charges asked by defendant on accomplice and accessory were not pertinent to any issue in this case, and there was no error in the refusal of the court to give them. The evidence in this case was of a circumstantial character, and the court gave to the jury a proper charge on the subject. The defendant had the benefit of able counsel. A fair and impartial jury of his own selection found him guilty of murder in the first degree, and assessed his punishment at death.

We have given the record a thorough and careful investigation, and we have discovered no error therein, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.