# JANUARY, 1912.

### WILLIAM T. GOWANS v. THE STATE.

No. 1473.  Decided January 3, 1912.

Rehearing denied April 3, 1912.

**1.—Theft—Confessions—Arrest—Res Gestae.**

Where, upon trial of theft, the evidence showed that the defendant was seen to take the property, and was followed by an officer for about a hundred yards and arrested, and found with the property, confessing that he had taken the same, the same was admissible as res gestae. Following Bronson v. State, 59 Texas Crim. Rep., 17, and other cases.

**2.—Same—Brief—Bill of Exceptions.**

Objections presented in the brief, but not stated in the bill of exceptions, can not be considered on appeal.

**3.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of theft, the evidence was positive and direct, there was no error in the court's failure to charge on circumstantial evidence. Following Barnes v. State, 53 Texas Crim. Rep., 629, and other cases.

**4.—Same—Charge of Court—Other Offenses—Article 723.**

Where, in a misdemeanor case, the court charged as to other offenses, and no special charge was requested, there was no error, and article 723, Code Crim. Proc. does not change this rule.

**5.—Same—Argument of Counsel—Harmless Error.**

Where, upon trial of misdemeanor theft, it was brought out by the defense that other cases of a similar character were pending against the defendant, and the State's counsel in his argument stated that he might dismiss these other cases, but did not know what he would do, etc., while improper, was harmless error, as defendant's guilt was fully established, and he was not given the maximum punishment. Following Young v. State, 31 Texas Crim. Rep., 24, and other cases. Davidson, Presiding Judge, dissenting.

Appeal from the County Court of Dallas County at Law. Tried below before the Hon. W. F. Whitehurst.

Appeal from a conviction of misdemeanor theft; penalty, one year confinement in the county jail.

The opinion states the case.

*Lively, Nelms & Adams,* for appellant.—On the question of defendant's confession: Rains v. State, 33 Texas Crim. Rep., 294.

On question of argument of counsel: Kujadt v. State, 38 Texas Crim. Rep., 681.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was prosecuted under an information and complaint charging him with the theft of forty-one feet of leather belt of the value of forty-one cents per foot from R. E. Wilson. He was convicted and his punishment assessed at one years confinement in the county jail.

As there are several questions in this case that will be better understood by reading the testimony, we have concluded to copy it. It is as follows: "R. E. Wilson, witness for the State, being duly sworn, testified as follows: My name is R. E. Wilson. I know the defendant, Wm. T. Gowans. That is him sitting over there in the courtroom. I knew him on the 18th day of April, 1910. He was arrested that day with an amount of leather belting in his possession. I was not present at the time he was arrested. I was present the next morning after his arrest. I am the superintendent of the Continental Gin Company. I had the care, control and management of this belting. I do not know of my own knowledge whether this defendant took the belting or not. If he took it, it was without my knowledge or consent. It was worth practically forty-one cents per foot net. It was taken in the county of Dallas and State of Texas, on the 18th day of April, 1910. There had been other thefts of belting. I do not know for how long a time. I had reported the matter to the city detective department. The defendant was arrested by Officer Manion. I had requested Chief Alexander to send a man out there and he sent Mr. Manion out. I think there was in the neighborhood of $150 or $160 worth of belting taken, all told, at various times; part of it was recovered after Mr. Gowans was arrested from various shoe shops. It was taken in the west end of our brick warehouse on the Texas & Pacific right of way on the back side of the plant. The belting recovered by us is now in the building of the Continental Gin Co., labeled and tagged just as we recovered it. I do not know of my own knowledge where it was recovered. I know where part of it was recovered." Cross-examination: "As near as I can arrive at it there was about $150 worth of belting taken, all told. The amount includes all the belting we have lost and includes all that we have recovered. The State has filed a case against the defendant for each of the packages of leather which we

recovered. When I spoke of the $150 worth of belting, that includes all of the belting that he is charged in eleven cases now pending in this court, with having taken from us."

Thomas L. Manion, for the State, being first duly sworn, testified as follows: "My name is Thomas L. Manion. I am a police officer in the city of Dallas, and was such on the 18th day of April, last year. I have known the defendant, W. T. Gowans, since that time, that is, April 18, last year. That is him there (pointing him out); I saw him on the evening of April 18. I was detailed to investigate a case of leather belting that was being taken from the Continental Gin Co. by the chief of police, and in company with Officer Perkins I went out there to the plant, and in company with the foreman, Mr. Munger, and Mr. Wilson; and with regard to the case, we decided that we should visit the plant in guise of fire inspectors. Mr. Perkins and myself to be the fire inspectors, and we went around the plant as fire inspectors, taking notes of all the different things, and when we came to the fire room where Mr. Gowans was employed, and we ordered a pile of sawdust that was in this fire room removed and we stepped out and Mr. Gowans went out to the sawdust pile and took out a small package and took it to a closet in that room. I watched Mr. Gowans that day and then followed him home that night. I watched outside of his house, and when he came out again, I followed him back to the plant, and he went into this fire room. He had a key and I had a key, also, and I followed along behind him and he took two bundles of leather from the closet in the fire room, the same closet that these bundles had been put in; two packages. I saw him with one package. The package that Mr. Gowans took out of two bundles of leather, and then I told Mr. Gowans that he was under arrest. He was close to the Elm Street car line up that short street, probably 100 yards from the plant, when I told him he was under arrest; he was on the street and appeared to be waiting for a car. I told him he was under arrest. He asked me what he was arrested for, and I told him he was arrested for stealing leather belting from the Continental Gin Co.—that package— and I examined the package under his arm to find out what it was and it was leather belting. He confessed to me that he had stolen the belting which he had from the Continental Gin Co. I then asked him where he had taken the other belting. He told me he would show me where he had sold the other leather belting, and I called a patrol wagon and sent him down and told him I would attend to that the next day; after I made my report, we would go around the next day and find the other leather belting. The next day I took him in an automobile and he voluntarily showed me where this other leather belting was; in company with Mr. Munger and Mr. Perkins we went around to the different places, and Mr. Gowans pointed it out. We went to 478 Elm Street, found two bundles at Morris Chonitniesky; 172 Main Street; two bundles at

Harris Sapro; at Joe Goldman, 172 Main, two bundles; Mendel Cohen, two bundles; Louis Coniglio, 104 North Akard, one bundle; Louis Venor, 369½ Elm Street, five bundles; Julius Josman, 408 Elm Street, one bundle; Chas. Boejlin, 676 Elm Street, one bundle; Tony Zaby, 132 North Ervay, five bundles; Sam Messianas, 183 South Ervay, one bundle.

"I did not make any promise to the defendant of any immunity or anything else to induce him to confess to me. I told him that he would be given every show to get bondsmen or anything I could do for him in that line; that he could notify anybody over the telephone."

Cross-examination: "I got the several items that I have testified to at a number of places. They are the articles that he has been charged with in the other cases. Some of these complaints are a separate charge; for instance, we would go to one place where he told us it was; that was a separate charge against him. We have a separate charge for each of these places. The belt that he had on his person when arrested and the other belting which we found, makes up the eleven cases now pending against him."

E. M. Seton, a witness for the State, testified as follows: "My name is E. M. Seton. I know the defendant Gowans. I am in the employ of the Continental Gin Co. I never gave the defendant permission to take any leather belting, that is, any of this belting he is charged with taking. Mr. Wilson has charge of everything out there." This is the testimony and all the testimony adduced on the trial as shown by the statement of facts filed herein.

The first ground in the motion and the first bill of exceptions relate to the admissibility of certain testimony of Mr. Manion, the bill being as follows: "The witness Manion, for the State, testified as follows: 'After Mr. Gowans left the plant with two packages, I followed him to about a distance of 100 yards from the plant on the street, where he stopped and appeared to be waiting for a car. I went up to him and told him he was under arrest. He asked me why he was arrested, and I told him he was arrested for stealing leather belting from the Continental Gin Co.—that package—which he had under his arm, and I examined the package to find out what it was, and it was leather belting. He confessed to me that he had stolen this belting from the Continental Gin Co., and also stated that he had stolen other belting.' Which said testimony, at the time the same was offered, was in open court objected to by the defendant on the ground that the said confession was not in writing, and was made after the defendant had been placed under arrest, which objection was, by the court in all things overruled, and the witness permitted to testify to which action on the part of the court, the defendant, then and there in open court excepted, and here now tenders this his bill of exceptions and asks that the same be approved and filed as a part of the record in this cause."

That appellant was under arrest at the time he made this confession is not disputed, but the evidence of the witness Manion is that this admission was made in connection with the statement that he admitted stealing belting at other times, which was found to be true, and the other belting recovered at the places pointed out by defendant. This court, in the case of Bronson v. State, 59 Texas Crim. Rep., 17, 127 S. W., 175, holds this testimony admissible as res gestae. It will be noticed in the testimony that the witness sees appellant take the property, and in the time it takes to walk 100 yards arrests him, when he admits the theft and other thefts from the same person, and then takes the officer to the places where the other property is found. If defendant at the time of his arrest had made a statement explaining his possession consistent with his innocence, none would doubt that it was admissible in evidence, and the same rule applies when he makes a statement at the time admitting guilt. (See, also, Johnson v. State, 46 Texas Crim. Rep., 291, and Powers v. State, 23 Texas Crim. App., 42.) And especially is this true, when the statement is followed by finding stolen goods at the places pointed out by the person arrested. This question is discussed at length in Weller v. State, 16 Texas Crim. App., 200, and the rule there laid down has been followed in this State. The court did not err in admitting the evidence stated in the bill over the objections "that it was not in writing, and was made after the defendant had been placed under arrest," and no other objections were urged in the bill. Objections presented in the brief but not stated in the bill of exceptions can not be considered by us.

In the next ground of the motion complaint is made that the court failed to charge on circumstantial evidence, and of the refusal to give defendant's special charge as shown by bill of exceptions No. 2 relating thereto. Under the evidence in this case a charge on circumstantial evidence was not called for. Mr. Manion testified, as shown by the above statement of facts, that he saw defendant go in the house "and take two bundles of leather from the closet in the fire room. That he followed him about 100 yards from the plant to the street car track, where he arrested him and took the leather away from him, and defendant confessed he had stolen it." The leather was shown to belong to the Continental Gin Co., of which Mr. Wilson was manager. This would not make a case of circumstantial, but positive evidence. Barnes v. State, 53 Texas Crim. Rep., 628; High v. State, 54 Texas Crim. Rep., 333; Dobbs v. State, 51 Texas Crim. Rep., 629; Cabrera v. State, 56 Texas Crim. Rep., 141, and cases collated in section 203 of Branch's Criminal Law of Texas.

Appellant by bill of exceptions complains that the county attorney denounced the defendant as a confessed thief, and in another bill that the county attorney used the following language: "Now, gentlemen of the jury, if you make a mistake in convicting the defendant, his attorneys, who know the law, can and will correct it on a

motion for a new trial or on appeal, and if you will give the defendant a sufficient punishment in this case, I won't say what I will do, but I may dismiss the other ten cases pending against him for other thefts." The county attorney should not have used such language, but in this case ought such improper language be ground for reversal. The defendant requested special charges in regard thereto, and the court should have given them. But when we turn to the evidence herein copied in full, it will be seen that defendant on cross-examination of Mr. Wilson and Mr. Manion developed the fact that there were other cases pending against this defendant for theft. The State had not proven nor offered to prove that there were other cases pending against him, but defendant, for some reason, brought the fact out that there were eleven cases pending against him prominently before the jury, and when defendant had brought these facts before the jury, should a statement of the county attorney "that he would not say what he would do, but he might dismiss the other ten cases if the jury gave defendant sufficient punishment in this case," cause a reversal thereof? We think not, in view of the fact that the jury did not give defendant the maximum punishment. The defendant could not and did not have any object in view in developing that there were other cases pending against the defendant, except that the jury should take the same into consideration in fixing the punishment to be assessed in this case, and if the county attorney, realizing the object and purpose, sought to meet it in the manner he did, the occasion having been brought about by defendant, he ought not now to be heard to complain. They could have assessed two years confinement in the county jail, and in addition thereto a fine of $500, whereas they only assessed a punishment by imprisonment of one-half the time they were authorized and no pecuniary penalty. When we take into consideration that this is a case of an employe stealing from his employer, and he is caught with property of the value of over sixteen dollars on his person, we do not think the punishment excessive, or that it is evident that the jury was unduly influenced by the remarks of the county attorney. This court has laid down certain rules in the case of Pierson v. State, 18 Texas Crim. App., 564, Judge Willson saying:

"As to the other remarks of the district attorney which were objected to, we can perceive no impropriety in them. It was the duty of the district attorney, if he thought the evidence established the guilt of the defendant, to demand his conviction. He demanded a conviction in the name of the State, in the name of law, justice and right, in the name of society, in the name of the widow and children of the deceased. We see nothing wrong in this. If the defendant committed the murder, he had acted against the peace and dignity of the State; he had outraged law, justice, right and society; he had clothed the wife in widow's weeds, and had made fatherless the chil-

dren of the deceased; and each and all of these consequences of his crime demanded his conviction and punishment.

"It has become quite common to except to the remarks of counsel for the State in their addresses to the jury. We find such exceptions in the majority of contested cases that come before us. If we had sustained all these exceptions, the effect would have been to have virtually closed the mouths of prosecuting attorneys. While argument should be restricted legitimately, it should not be so unreasonably limited as to render it ineffectual. The State has rights in this respect as well as defendants. And in view of the frequency of exceptions of this character, we will take occasion here to say that before we will reverse a conviction because of remarks of prosecuting counsel, it must clearly appear to us, 1, that the remarks were improper, and, 2, that they were of a material character, and such as, under the circumstances, were calculated to injuriously affect the defendant's rights."

This rule has been followed since the rendition of that opinion, and in view of the evidence in this case, we do not think it can be said that the remarks injuriously affected defendant's rights, and especially so in view of the facts developed by defendant on cross-examination for the purpose of reducing the punishment in this case.

The only other ground relates to the matter shown by bill of exceptions No. 4, wherein the following paragraph of the court's charge was objected to: "You are further instructed not to consider any testimony in reference to any thefts committed by the defendant other than the forty-one feet of leather belt, alleged in the information." This was followed by the following paragraph: "In all criminal cases the burden of proof is on the State. The defendant is presumed to be innocent until his guilt is established by legal evidence, beyond a reasonable doubt; and in case you have a reasonable doubt as to the defendant's guilt you will acquit him, and say by your verdict 'Not guilty.'"

While, as stated above, exception was reserved to that paragraph of the court's charge, no special charge was requested in regard to the matter, and if a more explicit charge was desired in regard to the purposes for which the testimony in regard to the other thefts was admitted, this being a misdemeanor, same should have been requested. It will be noticed that this evidence of other thefts, and the defendant taking the officer to the places where he placed or sold the leather, went in without objection, and that defendant himself developed, in cross-examination, the fact that there were other cases pending against this defendant for other cases of theft, and the court instructing the jury they could not consider this testimony, although admitted without objection, could not have been hurtful to defendant. In fact, it would probably prove beneficial, when the remarks of the county attorney, of which defendant also complains,

are considered, for herein the jury is instructed not to consider such testimony for any purpose.

We have copied herein all the testimony adduced on the trial of this case. It shows defendant's guilt beyond all doubt. No defense is offered, no testimony tending to excuse, justify or mitigate the offense is offered on behalf of the defendant, and this being true, and evidence proving guilt beyond a shadow of a doubt, we would not feel authorized to reverse the case because of improper remarks of counsel for the State, and some slight error in wording this paragraph of the charge. It could not have been harmful, because under no theory would a jury have been authorized to acquit the defendant under the evidence, and since the amendment of article 723 this court has held, and is required to hold, unless the error in the charge is such that it was calculated to injure the rights of the defendant, we will not reverse the case. Marsden v. State, 59 Texas Crim. Rep., 36; Kosmoroski v. State, 59 Texas Crim. Rep., 296, and in Basquez v. State, 56 Texas Crim. Rep., 329, Presiding Judge Davidson, speaking for the court, says:

"This conviction is for a misdemeanor. The rule in misdemeanor cases is, in order to have the charge of the court reviewed, exception must be taken to the charges given, and that special instructions be requested, such as are desired, otherwise this court, under the statute, will not revise supposed errors. It may be well enough to repeat here what was said in the case of Woods v. State, 75 S. W. Rep., 37: 'This being a misdemeanor case, omissions in the charge of the court must be cured at the time by special written charge requested by appellant. His failure to make such request, even though the omission in the charge be erroneous, will not authorize this court to reverse the case. However, appellant's counsel, in argument before this court, insists that article 723, Code of Criminal Procedure of 1895, has changed the rule with reference to misdemeanors. We have carefully examined this question, and, in our opinion, said article merely extends the time of exception to the charge of the court, but in no way cures the failure of the defendant in misdemeanors to tender special charges to the court at the time of the trial. Since the adoption of article 723 this question has been before this court several times, and in each instance we have held that the old line of authorities on the question of charge is misdemeanor cases still applied. Ramsey v. State, 65 S. W. Rep., 187; 3 Texas Ct. Rep., 359; Garner v. State, 70 S. W. Rep., 213; Bush v. State, 70 S. W., Rep., 550. For authorities under the old article, see White's Annotated Code of Criminal Procedure, article 719, sec. 813, subd. 6.' See also Schoennerstedt v. State, 55 Texas Crim. Rep., 638, 117 S. W. Rep., 829."

Inasmuch as this is a conviction for a misdemeanor theft, and there being no special instructions requested in regard to matters complained of in the court's charge, we can not consider such mat-

ters on appeal, and the error committed by the county attorney is not of that gravaman as should cause a reversal of the case.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### April 3, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing in which he earnestly insists we were in error in holding that the testimony of the witness Manion was admissible. The witness testified: "He (deft.) confessed to me that he had stolen this belting from the Continental Gin Company, and also stated he had stolen other belting," which was objected to on the ground that "said confession was not in writing, and was made after the defendant was under arrest." For the circumstances under which this confession was made we refer to the original opinion where the testimony of the witness was copied in full. Upon a more thorough examination of the record and the authorities we are more firmly convinced that the evidence was admissible as a res gestae statement. In the case of Powers v. The State, 23 Texas Crim. App., 42, Judge White discussed this question, and holds:

"Most serious complaint is made of certain testimony of the State's witness, Coggin, permitted to be given in evidence over defendant's objections. The witness Coggin was the party who arrested defendant after the homicide, under circumstances which may be briefly stated thus: In a very few seconds after the fatal blows had been inflicted, Grounds told defendant 'he had killed Eubank, and that he had better get on his horse and leave.' Defendant immediately mounted his horse and fled. Coggin, seeing him on his horse running off, and having heard he had killed Eubank, procured a Winchester rifle, mounted another horse and went rapidly in hot pursuit, which pursuit was continuous for a period of not more than five minutes, when he overtook or came upon the fugitive, having gone about three-quarters of a mile. When within thirty or forty feet of defendant, Coggin says: 'I told him to hold up; if he did not I would kill him. I told him this two or three times; about the second or third time I told him this he stopped and I held him up.' Witness was asked by the prosecution, 'What then occurred?' and answered, 'I told him he must go back to town then with me; that he had killed Eubank.' Counsel for the State then asked witness, 'What did Powers say in reply?' to which defendant's counsel objected because defendant was under arrest, and because no predicate had been laid as required by the statute for the admission of confessions of a defendant made under arrest. These objections were overruled, and in answer to the question the witness said: 'Defendant said,

"No, I have not killed him." I said, yes, you have, and defendant replied, "If I have killed him nobody saw me." '

"Our statute relating to or prescribing the rules under which admissions or confessions of a party being in arrest may be used against him (Code Crim. Proc., arts. 749 and 750), have uniformly been construed to embrace all statements, acts or conduct from which guilt might be inferred. (Haynie v. The State, 2 Texas Crim. App., 168; Marshall v. The State, 5 Texas Crim. App., 273; Williams v. The State, 10 Texas Crim. App., 526; Austin v. The State, 15 Texas Crim. App., 388.) That defendant was under arrest, as shown by the circumstances above mentioned, can scarcely be questioned; that an inference of guilt might well be predicated upon his statement, 'If I have killed him nobody saw me,' will not be denied. And, again, the inference may also be correct that defendant was in fear of his life when he made the statement, and a statement made under such circumstances could not be regarded as voluntary. (Warren v. The State, 29 Texas, 370; Nolan v. The State, 14 Texas Crim. App., 474.)

"As confessions or as admissions of fact from which guilt might be inferred, we are of opinion that the objections urged to the admission of the testimony should perhaps be considered well taken. The question then is, was the testimony admissible as res gestae? If res gestae, then the evidence was admissible, notwithstanding it might not be admissible as a confession or admission, because res gestate is independent of, superior to, and can not be restricted or limited by the rules relating to confessions or admissions made after arrest. Whilst it is true that declarations made by a defendant in his own favor, unless part of the res gestae, are not admissible for the defense, it is otherwise equally true that when such declarations are part of the res gestae they are admissible either for or against the defendant. Mr. Wharton says: 'Res gestae are events speaking for themselves through the instinctive words and acts of participants, not the words and acts of participants when relating the events. . . . Nor are there any limits of time within which the res gestae can be arbitrarily confined. They vary in fact with each particular case. . . . They need not be coincident as to time if they are generated by an excited feeling which extends without break or let down from the moment of the event they illustrate. In other words, they must stand in immediate casual relation to the act, and become part either of the action immediately producing it, or action which it immediately produces. Incidents which are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act.' (Wharton Crim. Ev., 8th ed., secs. 262 and 263.) Again he says, 'But we must remember that continuousness can not always be measured by time.' (Id., sec. 264.) And again, 'Instinctiveness is the requisite, and when this obtains the declarations are admissi-

ble.' (Id., sec. 691; see also Bradberry v. The State, 22 Texas Crim. App., 273, and Cartwright v. The State, 16 Texas Crim. App., 473.) We are of opinion the evidence was admissible as res gestae."

If the statement in that case was admissible as res gestae, the testimony objected to in this case would certainly be admissible, and the rule as thus laid, has been followed by this court in an unbroken line of decisions.

Again, it is contended that this court stating that the remarks of the county attorney were improper, the case should be reversed. If, as said in the original opinion, there was any question of the guilt of defendant, if under any contention the defendant would be entitled to an acquittal, we would be inclined to agree with appellant. The attorneys should never use such language, but under the evidence in this case, as copied in full in the original opinion, no verdict other than that of guilty could have been rendered by the jury, and under such circumstances this court has held in Young v. The State, 31 Texas Crim. Rep., 24: "While the remark was improper and prejudicial to defendant, the error was harmless under the facts of this case, because the guilt of defendant was incontrovertible and deliberately confessed by him. If the evidence establishing the guilt of the defendant be of such a nature as can not reasonably be questioned, such would not constitute reversible error."

Motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE.—I dissent. Error being conceded, judgment should be reversed. The punishment was far above the minimum. Rehearing should be granted.