LEWIS PULLEN v. THE STATE.

No. 2391. Decided April 16, 1913.

Rehearing denied May 14, 1913.

**1.—Burglary—Circumstantial Evidence—Charge of Court.**

Where the evidence was not wholly circumstantial, there was no error in the court's failure to charge on circumstantial evidence. Following Williams v. State, 58 Texas Crim. Rep., 82, and other cases.

**2.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.**

Where, upon trial of burglary, the State contended that defendant was shot in the arm while in the act of committing the offense, and although de-

fendant did not take the witness stand, he offered his wounded arm in evidence to counteract the testimony of the State, an indirect reference to defendant's failure to testify by State's counsel was not reversible error. Following Wooten v. State, 50 Texas Crim. Rep., 151, and other cases.

### 3.—Same—Evidence.

Where the evidence offered was not original testimony and would not tend to impeach the State's witness, there was no error in rejecting it.

### 4.—Same—Evidence—Examination by Physician.

Upon trial of burglary, where it was shown that defendant had been wounded in the arm while committing the offense, there was no error in permitting physicians to testify as to the length of time the wound had been inflicted at the time of their examination of it.

### 5.—Same—Evidence—Defendant's Whereabouts.

Where, upon trial of burglary, the evidence showed that defendant was at a certain place on the night of the burglary, there was no error in admitting testimony that another witness had seen him there at a certain time, which, on cross-examination, was shown that someone else had told him, as this was not a material issue.

### 6.—Same—Misconduct of Jury—Defendant's Failure to Testify.

Where, upon appeal from a conviction of burglary, appellant complained that the jury had discussed his failure to testify before they arrived at their verdict, but the record showed that the testimony on this issue had not been filed during court and that appellant had made his affidavit before his attorney, the same could not be considered on appeal; besides, the alleged misconduct was not such as to vitiate the verdict.

### 7.—Same—Sufficiency of the Evidence.

Where, upon trial of burglary, the evidence sustained the conviction under a proper charge of the court, there was no error.

Appeal from the District Court of Hunt. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

The following statement by the Assistant Attorney-General is substantially correct:

The undisputed evidence shows that the store was entered by someone at 3:20 a. m. on the 11th day of July, 1912; that at the time the party entered the store, one J. W. Cornett, a guard, was concealed therein; that he fired upon the intruder three times. The undisputed evidence further shows that appellant was in the town of Greenville, where this store was situated, on the evening of the 10th with a wagonload of peaches for sale; that he was seen at the camp meeting by his father and mother, who testified to that effect, at Greenville about 10 p. m. that night; that he was seen by one C. E. Ashmore at about fifteen minutes before 12 o'clock on that night near the burglarized store; that he was again seen by another party at about 1 o'clock that morning. The undisputed evidence further shows that about 3:30 a. m. on the morning of the burglary appellant went to the owner of the wagon yard and woke him up and told him he wanted to get his wagon out of his

yard and that he did get the wagon out about that time and left Green-ville. The witness Cornett admits that he told various and sundry persons before the arrest of appellant that the person he shot in the house burglarized was either a negro or a white man blacked, and that he was a tall man. This was also testified to by quite a number of wit-nesses. But Cornett testified upon trial that as soon as appellant was arrested he recognized him as the man whom he shot in the house, and upon trial he positively identified appellant as the burglar and says he was mistaken about him being as tall as he said he was or being a black man, and testifies that he is sure appellant is the man. The ·undisputed evidence further shows that on the morning of the 11th appellant called a doctor to dress his arm, and that he was suffering from a gunshot wound which penetrated his arm, which the doctor says had been recently inflicted; that on the next day after this he had his wound dressed by another physician, who testified that it was a gunshot wound. Appellant made no explanation to either of these physicians so far as the record shows, as to how he got this wound. He was arrested within forty-eight hours after the burglary and placed in jail.

*Spearman & Peak,* for appellant.—On question of admitting evidence as to time defendant was seen at a certain place: Sanders v. State, 54 Texas Crim. Rep., 101.

On question of impeaching State's witness: Sanders v. State, supra.

On question of misconduct of jury: Lax v. State, 79 S. W. Rep., 578.

On question of allusion to defendant's failure to testify: Wallace v. State, 81 S. W. Rep., 966.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was prosecuted and convicted of bur-glary, and his punishment assessed at two years confinement in the State penitentiary.

As J. W. Cornett on the trial swears positively to the identity of the defendant as the man who entered the store, it was not necessary to give a charge on circumstantial evidence. It is true on cross-examina-tion and by proof of statements made at other times and places the appellant to some extent weakens the force of this identifying testi-mony, but this goes only to the weight to be given it by the jury, and did not render a charge on circumstantial evidence necessary. It is only when the testimony relied on for a conviction is wholly circum-stantial that the court is required to so charge. Tooney v. State, 8 Texas Crim. App., 452; Buntain v. State, 15 Texas Crim. App., 515; Hunni-cutt v. State, 18 Texas Crim. App., 498; Hayes v. State, 30 Texas Crim. App., 404; Williams v. State, 58 Texas Crim. Rep., 82, 124 S. W. Rep., 954, and cases cited in sec. 203, Branch's Texas Crim. Law.

Complaint is made of the remarks of the district attorney. It appears from the evidence that the watchman fired at the alleged bur-

glar three times, that defendant when arrested had been shot through the arm. The defendant did not testify, nor was there any evidence offered explaining how he received this wound, although appellant, during the trial, placed his arm in evidence, showing that the bullet entered the back of the arm and came out in front, the contention being that it would have been impossible for Cornett to have made this wound at the time he fired at the burglar, inasmuch as the bullet did not go in the body. Cornett had testified that when he first fired the arms of the man were hanging by his side. There might be force in this contention if only one shot had been fired, but as Cornett says the burglar turned and ran, when he fired twice more, and there being no positive testimony which shot inflicted the wound, the contention is without much strength. However, this shows the contention of defendant, and the bill recites that the district attorney said: "If the defendant did not receive that wound in Orr Little's store, as shown by the testimony of the State, wouldn't you like to know where the defendant did receive said wound? If he received the wound at the hands of a highwayman, would you not like to have heard the man who inflicted the wound or some witness who saw the wound inflicted testify in this case?" It is contended that is a reference to defendant's failure to testify. He had offered this wounded arm in evidence, but did not say how or when he received the wound. We think under the circumstances the district attorney was justified in using the language quoted; and it can not be said to be more than an indirect reference to his failure to testify if that much can be said, and it is not every incidental reference to such fact that will be cause for reversal and especially is this true, when it is only by a strained construction the language can be said to refer to defendant's failure to testify. Wooten v. State, 50 Texas Crim. Rep., 151; Combs v. State, 55 Texas Crim. Rep., 334; Cabrera v. State, 56 Texas Crim. Rep., 141; Green v. State, 31 S. W. Rep., 386, and cases cited in 5 Enc. of Law & Prac., 389.

Those bills in the record which show that when attempting to prove up contradictory statements of the witness Cornet, the defendant also desired to prove what the witnesses had said to Cornett at that time. In refusing to permit such statements to be introduced in evidence the court did not err, as it was not necessary to render plain the statement of Cornett. What these witnesses may have said to Mr. Cornett would not be admissible as original evidence, and would not tend to impeach him.

Several physicians testified in the case, and after qualifying and testifying to an examination of the wound in the arm, there was no error in permitting them to state as to the length of time the wound had been inflicted at the time of the examination. In their testimony they gave as a reason the condition of the wound, describing it, flow of blood, etc., and such facts and circumstances as enabled them, with their medical knowledge, to testify in regard to such matters.

A witness testified that he saw appellant in Greenville on the night

of the burglary at ten or fifteen minutes to 12 o'clock. On cross-examination by appellant it was shown this witness knew the time by reason of the fact that he had been so informed by another person when appellant moved to exclude the testimony. The time this witness saw the appellant was not a material issue in the case, but only the fact that he had seen him in Greenville that night; consequently the court did not err in the matter. But if this should be held to be error, it would be no ground for reversal, because the appellant proved the same facts by defendant's father and mother and other witnesses, so that the fact that appellant was in Greenville on the night of the burglary ceased to be a contested issue.

There are a number of bills in the record relating to a question of whether or not the jury discussed the failure of defendant to testify on the trial of the case before they arrived at their verdict. In the first place it may be said that the testimony heard on this motion was not filed in the court below until February 15, 1913, when the court had adjourned on the 31st day of the preceding November. Being filed after term time, it can not be considered. (Probest v. State, 60 Texas Crim. Rep., 608.) In the next place it may be said that the affidavits raising this issue were sworn to before one of the attorneys in this case, and on motion of the State were stricken from the record for this reason, and in this the court did not err. (Maples v. State, 60 Texas Crim. Rep., 169.) But should we ignore these matters, and consider the affidavits, evidence and all proceedings had in this matter, the foreman of the jury testified: "I was the foreman of the jury that tried Lewis Pullen at this term of the court for burglary; when the jury was charged and we went out in the room to deliberate on the case, the first thing done by the jury was to elect a foreman; I was elected foreman; the next thing done, I read the charge to all of them; then we took a ballot; the result of that ballot was nine 'guilty' and three 'not guilty.' The first thing that was done after that ballot was taken was Mr. Abernathy was the first one spoke; he was over next to the east door; he said, 'I was one that voted "not guilty," but I am better satisfied now and I am willing to reconsider my ballot and go with the majority.' Mr. Clark was the next man that spoke, and says: 'I was another,' and he says: 'It was funny'—before he said that, though, he said: 'I wa'n't satisfied in my own mind which way to vote, but I am willing to go with Mr. Abernathy'—that is, go with the nine; the next was Mr. Reavis, he stood between Mr. Clark and I, and he said: 'I am the other man, I recken,' he says, 'I voted "not guilty."' but he says, 'I didn't have my mind right well made up and wanted to know how much punishment; I wanted it the lowest; but I didn't know how to get it, but if you will give him the lowest punishment I am with the bunch,' if he didn't say 'bunch' I am mistaken, but I think he said 'bunch.' At this time Mr. Clark said: 'I think it is funny he didn't tell us how he got that shot if he didn't get it there and had that coat in evidence and his arm, too.' I had the charge in my hands and

raised it up and says to Mr. Clark, I says: 'We are instructed not to consider that'; another gentleman, I can point him out but I can't call his name, but he said: 'I remember that in the charge.' (Witness here pointed out Mr. Presley.) I opened the charge and read that part of it over aloud twice so that all might understand it thoroughly. Now Mr. Clark telling about coming up there, several did crowd around to see it read, but I read it aloud twice—made three readings of it; I read it the first time before anything was done. Mr. Clark having said this and Mr. Reavis having said that, I says, 'It seems all right except the punishment, if you are ready for the ballot we will ballot over; first, we were all one way; we didn't ballot by writing ballot; I said, 'A rising ballot will do just as well,' and they all arose up. I said: 'Are you all ready for the time?' but I says, 'You all ought to write it because I don't like to see jurors vote like the others do,' and they all put down on it 'two years,' the whole twelve of us; there was one or two or maybe three said 'guilty, two years,' and I take it it was those that voted 'not guilty' before put that 'guilty, two years.' What I have stated here was the only reference made in the jury room to the defendant's failure to tell how he got the wound." Seven other jurymen also testified, and taking into consideration the two affidavits filed, would make ten of the jurymen who were heard. The evidence to our mind clearly authorized the court to find as he did that the remark was made after the jury had agreed that appellant was guilty, but before the fixing of the number of years of punishment, and as the jury assessed the lowest penalty authorized by law, no reversible error is presented by this ground in the motion for new trial if all defects in presenting the question are waived.

We have carefully considered each bill of exception and ground in the motion for new trial, and no error is presented. The evidence, we think, conclusively shows the guilt of appellant, and the judgment is affirmed.

*Affirmed.*

[Rehearing denied May 14, 1913.—Reporter.]