The statute, Art. 666—38, Vernon's Ann. P.C., provides that the county judge of

the county shall make an entry of the result of such election in favor of the prohibition of such sale in the minutes of the Commissioners' Court, and "an entry thus made or a copy thereof certified under the hand and seal of the clerk of the court shall be prima facie evidence of such posting." See Cook v. State, 137 Tex.Cr.R. 492, 132 S.W.2d 404.

The motion for rehearing will therefore be overruled.

## WHITE v. STATE.
### No. 24626.

Court of Criminal Appeals of Texas.

Feb. 1, 1950.

Rehearing Denied April 5, 1950.

Chas. Nordyke, Stephenville, for appellant.

Sam Cleveland, District Attorney, Stephenville, Sam Russell, (Special Prosecutor) Stephenville, George P. Blackburn, State's Atty., of Austin, for the State.

GRAVES, Judge.

Appellant was charged as a principal for the offense of the murder of Crockett Ross, and by the jury was given the penalty of death, and he appeals.

The indictment herein contains three counts, two of which were not submitted by the court; and the one submitted alleged that appellant, on the 28th day of January, 1949, did kill Crockett Ross by shooting him with a gun.

The facts proven herein show that on such date, one Robert Bagwill, a 17-year-old boy and a nephew of appellant's ex-wife, and the appellant, a man 47 years old, were living together in Mineral Wells; that appellant and Bagwill decided to "make some places", meaning thereby to go out and rob someone; that they entered appellant's automobile and finally came to Stephenville in Erath County. They found a place that suited them near the John Tarlton State College, it being a filling station on a corner near thereto. They drove around this place and then decided to hold it up.

Appellant parked his car around on the north side of the block in which this filling station was located, and Bagwill got out, having a .38 caliber Police Positive Pistol with him, while appellant waited for Bagwill

in order to take him away in appellant's car after the robbery. This boy was gone about an hour and was seen in Mr. Ross' station by witnesses who identified him. Finally Bagwill came back to the car and told appellant that he had to shoot the man in the filling station who had attacked him with a hammer when he pulled his gun and demanded the money; that he shot six times and snapped the gun when it was empty; that the man fell over on Bagwill who pushed him off and then rifled the cash drawer and took the man's pocketbook out of his pocket; that they then drove back to Mineral Wells. Bagwill's overcoat was covered with blood, as well as his clothes and shoes, and appellant burned them up when they got home. There was something over $300.00 obtained in this robbery, and appellant got around $100.00 thereof. They soon started to Oklahoma, and at Jacksboro, Texas, they bought a paper and learned that Mr. Ross was dead.

The foregoing is taken from a written statement made by appellant which was introduced in evidence.

A futher statement relative to this homicide was taken orally from appellant in which he stated that Bagwill attempted to destroy the pistol with which Mr. Ross was shot by battering the same so that it would not be recognizable; that appellant then took such pistol and threw the same into a pool of water some distance out from Mineral Wells. Later, in company with some officers, appellant went to such pool, waded out therein and soon found the pistol from which it was shown that certain bullets had been fired, some of them coming out of Mr. Ross' body, and one out of the wall of the filling station.

Upon the careful trial court's own motion this cause was moved on a change of venue to Palo Pinto County, and we think the court's statement in such motion justified such change.

■ Bill of Exceptions No. 1 relates to the admission of an oral statement made by appellant while under arrest in which he told the officers that he had thrown this pistol in a hole of water, and in company with these officers appellant directed them

to such water, waded out therein, and recovered such pistol. We think this testimony was admissible under Art. 727, C. C.P., and under the phrase therein that "unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed." The objection to this oral statement recites that same was made under fear and not when appellant was in sufficient possession of his faculties to make a voluntary statement, and had no information as to what was going to happen to him. The trial court was correct in allowing the statement made by appellant at such time as follows:

"Dan White said he and Robert had planned to go to Stephenville and pull a highjacking, burglarize something; that is, steal something, and said they stopped some place at a cross roads or something and got some gasoline and then went on to Stephenville, and as soon as they got to Stephenville they drove around looking for a place to highjack and they came across this filling station out by the college. By reason of what Dan White told me there at the time, and where he carried me after that time we did find the gun with which *Robert Bagwill* (Crockett Ross) *had been killed."*

Bill No. 2 relates to the following portion of such oral statement as testified to by Mr. Suttle, a peace officer, at Vernon, Texas, as told to him by appellant: "They drove around and picked out this filling station out by the college and drove by it two or three times and saw this fellow Ross and decided that would be a good place and somewhere around 7:00 they parked on the opposite side of the block and Robert got out with a gun and left Dan at this place on the opposite side of the block from the filling station. (Interruptions and arguments, see SF 45 & 46). He said Robert was gone a long time; don't remember how long; and after awhile he came running back, Robert came running back to the car and said, 'I had to kill him * * *.' "

· This statement was objected to because it was alleged that this further statement exceeded the latitude allowed by the above-quoted portion of Art. 727, C.C.P., but that thereunder, the statement should have been held to render admissible only that portion thereof which related to divulging where the pistol was secreted, and not to further details relative to what had happened at such alleged hold up.

Where a confession, otherwise inadmissible, contains facts which conduce to establish one's guilt, such as the finding of the instrument with which the offense was committed, the whole of such statement is admissible. See Warren v. State, 29 Tex. 369, 370; Selvidge v. State, 30 Tex. 60; Walker v. State, 2 Tex.App. 326; Weller v. State, 16 Tex.App. 200; Walker v. State, 9 Tex.App. 38; O'Connell v. State, 10 Tex.App. 567; Massey v. State, 10 Tex.App. 645. See also Smith v. State, 34 Tex.Cr.R. 123, 29 S.W. 774; Spearman v. State, 34 Tex.Cr.R. 279, 30 S.W. 229; Williams v. State, 34 Tex.Cr. R. 327, 30 S.W. 669; Gowans v. State, 64 Tex.Cr.R. 401, 145 S.W. 614.

Bill No. 3 relates to the written statement of appellant which was introduced, and its introduction was objected to on the following grounds: "Because the statement was made two days after he was arrested; and we want to interpose the objection that the statement is not voluntary; it was obtained by force, threats and the application of physical punishment and rendered him to where (he) wasn't capable of acting *voluntary* at the time this statement was signed."

There is no testimony in the record substantiating such objection, no violence shown, no force nor threats, and no testimony relative thereto. We quote from appellant's written confession, which is in no way contradicted, the following: "I have been promised nothing whatever, this is all true and correct, I have just told it because it is the truth. Mr. Frank Granbury, and Mr. Robert George, who are the others in the room at this time hearing this statement made by me, have not raised their *voice* to me or said one word during the time it is being taken. I have made this statement of my own free will and voluntarily knowing I did not have to at all and knowing it could be used against me on the trial. On the trip to Oklahoma I just knew I would be picked up and caught for this but I wasn't until I was arrested last Sunday."

Bill No. 4 relates to the argument of the Honorable Sam Russell, Special Prosecutor, wherein he likened the testimony in this case to the tale found in the book, "Oliver Twist" by Dickens, where one Fagin was alleged to have trained young boys in certain acts of thievery. This bill is qualified by the court to show that no objection was made to such argument at the time it was made, and the first time anything was made known to the court concerning the same was when this bill was presented to the trial court for its approval on the 10th day of August, 1949, the trial herein having concluded on May 17, 1949. Appellant should have objected to such argument, if dissatisfied therewith, at the time it was made. See Salinas v. State, 113 Tex.Cr.R. 142, 18 S.W.2d 663; Smith v. State, 104 Tex.Cr.R. 616, 286 S. W. 223; Page v. State, 104 Tex.Cr.R. 63, 281 S.W. 871; Ferguson v. State, 95 Tex. Cr.R. 212, 253 S.W. 290; Ferguson v. State, 101 Tex.Cr.R. 670, 276 S.W. 919; Alexander v. State, Tex.Cr.App., 8 S.W.2d 176; Ross v. State, 102 Tex.Cr.R. 364, 277 S.W. 667; Simmons v. State, 93 Tex.Cr. R. 421, 248 S.W. 392, and cases cited.

Bill No. 5 alleges misconduct of the jury in that there was discussed among them in their deliberations appellant's failure to testify. The testimony heard on the motion for a new trial shows that a juror made the statement in the jury room that he wondered why they didn't put the defendant on the stand. It seems that someone said he had already made a statement, whereupon the foreman told the inquirer that the jury were not to consider that; and he turned to the paragraph of the charge relative thereto and read same to the jury, and no further mention was made thereof, and "that ended the whole discussion." This conversation occurred after a verdict of guilt had been arrived at but prior to the time the punishment was de-

cided upon. We express the opinion that such statement of the juror was but a bare allusion to appellant's failure to testify, and when mentioned it was suppressed and same is not sufficient to say that such failure was discussed in the jury room. It is not a sufficient allusion to cause a reversal herein. See Branch's Ann.Tex.P.C., p. 293, sec. 569, and the following cases: Leslie v. State, Tex.Cr.App., 49 S.W. 73; Mason v. State, Tex.Cr.App., 81 S.W. 718; Parrish v. State, 48 Tex.Cr.R. 347, 88 S.W. 231; Jenkins v. State, 49 Tex.Cr.R. 457, 461, 93 S.W. 726, 122 Am.St.Rep. 812; Johnson v. State, 53 Tex.Cr.R. 340, 109 S.W. 936; Powers v. State, 69 Tex.Cr.R. 494, 154 S.W. 1020; Pullen v. State, 70 Tex.Cr.R. 156, 156 S.W. 935; Veach v. State, 71 Tex.Cr.R. 181, 159 S.W. 1069; Cooper v. State, 72 Tex.Cr.R. 266, 162 S.W. 364; Coffman v. State, 73 Tex.Cr.R. 295, 165 S.W. 939; Howard v. State, 76 Tex.Cr.R. 297, 174 S.W. 607. See also Abernathy v. State, 127 Tex.Cr.R. 76, 74 S.W.2d 986; Bartlett v. State, 123 Tex. Cr.R. 464, 59 S.W.2d 157; Brice v. State, 123 Tex.Cr.R. 69, 57 S.W.2d 832; Freeman v. State, 118 Tex.Cr.R. 67, 39 S.W.2d 895; Hammonds v. State, 114 Tex.Cr.R. 394, 23 S.W.2d 372; Purcell v. State, 104 Tex.Cr.R. 633, 283 S.W. 172, rehearing denied 104 Tex.Cr.R. 633, 283 S.W. 1072; Mason v. State, 74 Tex.Cr.R. 256, 168 S.W. 115, Ann.Cas.1917D, 1094; Cooper v. State, 72 Tex.Cr.R. 266, 162 S.W. 364; Powers v. State, 69 Tex.Cr.R. 494, 154 S.W. 1020; Probest v. State, 60 Tex.Cr.R. 608, 133 S.W. 263; Mason v. State, Tex. Cr.App., 81 S.W. 718.

In Bill No. 5 we also find a complaint relative to the juror, O. H. McClure, being a prejudiced juror and one who had prejudged appellant's case prior to being selected as a member of the jury, the evidence introduced by appellant relative to such being that of a witness who testified that some week or two prior to this trial, he and McClure mentioned this trial and that McClure, while speaking of appellant, said: "He deserved all the law allows him." A further witness, A. D. Lewis, also testified that he heard part of a conversation that McClure had on the streets of Mineral Wells soon after the conclusion of this trial, and he heard Mr. McClure say: "I had my mind made up." This witness was hard of hearing but was pretty close up, and Mr. McClure spoke pretty loud, but did not say when nor why he made up his mind, nor what caused him to do so. The juror did say: "He would kill somebody else," and he meant Dan White. Mr. McClure testified that he was asked on his voir dire as to whether he had any opinion as to appellant's guilt or innocence, and he answered that he had none and did not have any such opinion at such time. He denied having told the witness Pennington or anyone else prior to this trial that "he deserved all the law would allow him." Neither did he make any statement after the trial that he had his mind made up. The trial court heard all this testimony at the hearing on the motion for a new trial and found against the allegations of misconduct as set forth therein, and we are of the opinion that he was correct in so doing.

This trial appears from the record to be fair and free from errors. The jury were the judges of the punishment to be meted out, and we can only say that this extreme penalty is merited by the proof in regard to this useless taking of the life of Mr. Ross for the purpose of robbery. The penalty is prescribed by law, and we see no reason for setting aside this verdict.

Thus believing, the judgment of the trial court will be affirmed.

## On Motion for Rehearing.

WOODLEY, Judge.

The evidence is sufficient to justify the jury in finding the following:

Appellant and Robert Bagwill made the journey in appellant's car from Mineral Wells to Stephenville on a joint venture their purpose being to acquire money by the unlawful means of robbery, burglary and theft.

Having selected the filling station of deceased as a place to be robbed, appellant stopped on the opposite side of the block, and the companion Bagwill left appellant,

armed with a deadly weapon, and went to the filling station. Appellant waited in his car for the return of Bagwill, as was their previously formed design, in order to carry Bagwill away after the offense and so secure the safety of his companion Bagwill.

He did carry him away, and thereafter burned the clothing and shoes of Bagwill as well as his own clothing, all after he had been informed by Bagwill that in the execution of their planned robbery, he had shot a man. Also appellant thereafter took part of the loot, and he hid the gun after knowing that the shooting had occurred. Appellant, at the very time of the killing, was doing and was ready to do one of the things planned for him to do in furtherance of their purpose, that is, he was awaiting the completion of the offense intended in order to carry his companion away to safety, and to further secure such safety by disposing of the criminative evidence—the gun and the bloody clothing.

Deceased was murdered by Bagwill during the existence of and in furtherance of the common design of appellant and Bagwill to rob the deceased. The killing was such as might have been, and should have been, contemplated as the result of their design to rob by the use of a loaded pistol.

Appellant was present at the commission of the offense in the sense that "present" is used in the statutes, Arts. 66 and 69, P.C., defining principals.

It was not necessary that he be in immediate contact with Bagwill, or be so situated at the time as to make him an eye or ear witness. He was present in the sense of being immediately at hand, and in the performance of his part of the planned unlawful act, a reasonable consequence of which was the murder of the victim. See Branch's Ann.P.C., p. 347, Sec. 680; and Hill v. State, 135 Tex.Cr.R. 567, 121 S.W.2d 996.

In his charge, the court properly instructed the jury upon the law applicable to such facts, and we cannot agree with appellant's contention that the law of principals has no application, or that the court misdirected the jury as to the law.

All other questions raised were fully discussed in the original opinion, and we remain convinced that no reversible error is shown.

Appellant's motion for rehearing is therefore overruled.

Opinion approved by the court.