**William Guy WOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42061.**

Court of Criminal Appeals of Texas.

May 7, 1969.

Rehearing Denied June 18, 1969.

Donald Metcalfe, Dallas, for appellant.

Henry Wade, Dist. Atty., Cecil Emerson, Kenneth E. Blassingame, Kerry P. Fitz-Gerald, Camille Elliott and James P. Finstrom, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

The offense is unlawfully attempting to pass as true a forged instrument in writing; the punishment, 4 years.

The indictment alleged that appellant and Willowdean Carolyn Wood, acting together, committed the offense of forgery and

fraudulently attempted to pass as true to one John R. Parker the check set out in the indictment, being a check dated August 10, 1967, payable to the order of Tom Thumb in the sum of $35.00, drawn on Empire State Bank of Dallas, Dallas, Texas, by Mrs. Pauline Norris, 7211 Glendora, EM8–5804.

Appellant's first ground of error relates to the sufficiency of the evidence and summarizes the testimony of all of the witnesses, all of whom were called by the state, as follows:

"John R. Parker testified that on August 10; 1967, he was employed at the Tom Thumb grocery store in Dallas, Texas, and had the authority to cash checks for the store. At about 7:20 p. m. a woman named Willodean Wood went to the office at the store where Parker was and handed Parker a check to cash. Parker had noticed the woman going through the grocery line buying groceries and had seen her in the store on prior occasions. The check she handed Parker was purportedly signed by a Pauline Norris, and was filled out in pen by Willodean Wood at the office counter immediately before she handed it to Parker for cashing. Parker did not cash the check but called a fellow employee named James to the office. Parker told Mrs. Wood she would have to wait until the police arrived. She started towards the front door and Parker held her and took her back towards the office. Defendant then came up for the first time, Parker not having seen him before, pushed Parker away, and defendant and Mrs. Wood hurried to a car outside the store.

"Parker followed them out the door and got the license number on the car as the two drove off together. He noticed some children in the car. Then Parker called the police, who arrived at the store shortly thereafter.

"Officer P. L. Anderson testified that he was a patrolman for the Dallas Police Department on the date of offense, and that he went to the scene following a radio call. He obtained the check in question from Parker and gave it to the arresting officers.

"Marvin Nowell of the Dallas Police Department testified he was on duty on the date of offense and arrested defendant and Willodean Wood in the car described to him on a police radio call. After receiving a second description of the two persons, he took them to the forgery bureau of the Dallas Police Department and turned them over to detectives.

"Marvin Buhl testified he was a detective in the forgery bureau of the Dallas Police Department and that after checking various directories, he could not find the name Pauline Norris listed in any of them. He further testified the telephone number on the check was listed as belonging to an oil company, and that there was no such address as the one listed on the check.

"Tommy Tompkins testified he was an investigator for the Dallas County District Attorney's office, that he searched for a Pauline Norris and could not find anyone by that name, and that the telephone number on the check belonged to an oil company."

The check described in the indictment was introduced in evidence without objection.

The witness Parker's testimony relating to appellant's participation includes the following:

"Q. Okay, now, what happened next? Did something else happen there?

"A. Well, she had gotten over to the door, she had sort of edged over to the door, but I wasn't—I just wasn't going to let her go out of the store and I said, 'No, I would prefer that you wait over here by the office.'

\*　\*　\*　\*　\*　\*

"Q. (By Mr. Emerson) Go ahead.

"A. So then she came back to the side of the office and we were stand-

ing there and I was sort of standing in front of her trying to keep her there, because there was only one way, we sort of had a little alcove by the office there, and while we were standing there this man came in and down along the side of the cigarette counter and just sort of came up, and as far as how the conversation went, I can't remember, but he just sort of pushed me out of the way.

\*      \*      \*      \*      \*      \*

"Q. (By Mr. Emerson) Now, after he (referring to appellant whom the witness had just identified) pushed you aside then what happened then?

"A. Well, she sort of went for the door and he went for the door, and she went on out the front door and he sort of blocked the doorway and sort of—

"Q. Well, now, you say 'sort of', now—

"A. Well, he did block the doorway. Once again, we have automatic doors in our store and we have rails that sort of block, sort of guides for the automatic doors, and he put his hands on both sides of the rail and blocked the doorway in that manner.

"Q. All right. Now, are you talking about this man here at the end of the table here?

"A. Yes, sir.

"Q. Now, what did he say at this time, if anything?

"A. Well, it was something as to, such as to 'go on out *of* the car and get away', or something; I couldn't tell you verbatim what he did say right then and there, but he did—

"Q. What did you do?

"A. Well, when he went on out the door I followed him out of the door and

got the car license number and came back in and called the police and asked if they could possibly stop a car.

"Q. Okay, did he hurry to the car, too?

"A. Right.

"Q. Did the woman hurry to the car?

"A. Right.

"Q. Did you see them drive off?

"A. Yes, sir, I saw them drive off.

"Q. All right, now, after you got the license number what did you do then?

"A. I came back in the store and called the police."

The court submitted the case as one of circumstantial evidence and charged the jury on the law of principals. The charge authorized the jury to convict if they found and believed from the evidence beyond a reasonable doubt that appellant was present and, knowing the unlawful intent of Willodean Carolyn Wood, aided her by acts or encouraged her by words or gestures and acted with her in the commission of the offense; and instructed the jury that if they did not so find from the evidence and believe beyond a reasonable doubt to find the defendant not guilty.

The jury was further instructed that to be present at the commission of an offense, the presence need not be actual immediate presence—such a presence as would make the party an eye or ear witness of what passes—but may be a constructive presence, such as being in view or immediately at hand.

There were no objections to the charge and no special charges were requested.

Appellant's arguments in support of his contention that the evidence is insufficient to support the jury's verdict and the conviction are that the offense was complete when Willodean Wood was detained and

"arrested" by the store officials and that any action of appellant thereafter would constitute him an accessory, if anything, if he had knowledge of the offense, and that the evidence fails to show either the whereabouts or activities of appellant prior to the arrest of Willodean.

Appellant cites and relies upon the rule that "unless the accused be then actually doing something which associates him with the execution of the unlawful act at the very time it is done, he would not be a principal." The Law of Principals, Accomplices and Accessories, Commentary, Vol. 1, V.A.P.C., p. XV.

 We are in accord with the state's contention and find that under the evidence the jury was authorized to find that appellant knew her unlawful intent and was immediately at hand to drive the getaway car and to aid and assist Mrs. Wood in the commission of the offense by getting her away from the scene of the crime and did so aid and assist her. See Branch's Ann.P.C.2d, Sec. 708; Lopez v. State, 170 Tex.Cr.R. 208, 339 S.W.2d 906; Hill v. State, 135 Tex.Cr.R. 567, 121 S.W.2d 996; White v. State, 154 Tex.Cr.R. 489, 228 S. W.2d 165, 170.

Appellant's remaining ground of error relates to testimony of the witness Buhk, admitted over objection that it was hearsay to the defendant, to the effect that in investigating the case he checked the directories—one known as the criss-cross, one known as the City Directory, and one the telephone directory, of the City of Dallas and twenty other cities or towns, and that there was no name or address such as Mrs. Pauline Norris, 7211 Glendora, in any of such directories.

The rule which appellant advances is "Where inquiry is being made as to the contents of a material document, the only competent evidence of such contents is the document itself." Texas Law of Evidence, Vol. 2, Sec. 1562, p. 401.

This rule has no application here.

The testimony offered by the state was not what the directories contained but what they did *not* contain. See Section 1566, p. 414, Texas Law of Evidence, Vol. 2; Ferguson v. State, 79 Tex.Cr.R. 641, 187 S.W. 476; Christoffel v. United States, 91 U.S.App.D.C. 241, 200 F.2d 734.

The judgment is affirmed.