ANN BOTTOMLEY, administratrix, *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Bristol.    October 25, 1897. — February 23, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Life Insurance — Revival of Lapsed Policy — Action — Place of Contract — Change of Place — Effect of Untrue Declaration.*

A foreign insurance company issued a policy of insurance on the life of C., who was the only person mentioned as a party to the contract, and who, at that time and until his death, lived in another State. The policy was taken out by B., an aunt of C., who paid the premiums, but was not named in the policy. She afterwards removed into this Commonwealth and paid the premiums to the insurer's agent here. Subsequently the policy lapsed for non-payment of premiums, and B. applied for its revival, certain answers to questions on the back of the application being signed by C. An agent of the insurer certified that he had seen and examined C., and the application for revival was granted by the insurer, which forwarded the necessary approval from its home office to its agent in this Commonwealth, who delivered the policy to B. *Held,* in an action by B. upon the policy, that the facts did not show, as matter of law, that after the supposed revival the place of contract was changed to this Commonwealth.

The place of performance will ordinarily be deemed to be the place of a contract, unless the parties intended otherwise.

The revival of a lapsed policy of insurance will not take effect, if a declaration or warranty contained in the application for such revival is untrue.

CONTRACT, by the administratrix of the estate of Julia Carey, upon a policy of insurance issued by the defendant on the life of the plaintiff's intestate. At the trial in the Superior Court, before *Braley,* J., the jury returned a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*C. R. Cummings,* (*J. W. Cummings* with him,) for the plaintiff.
*J. M. Morton, Jr.,* for the defendant.

ALLEN, J. On June 18, 1894, the defendant, a foreign insurance company, with its home office in New York City, (though the place of its incorporation is not stated,) issued a policy of insurance on the life of Julia Carey, promising to pay the stipulated amount " to one of the persons described in Condition First," upon receipt of proofs of the death of the insured. Condition First provided that " the company may pay this policy to either

the executor or administrator, husband or wife, or any relative by blood or lawful beneficiary of the insured." No other person than Julia Carey is mentioned as a party to the contract, and she is referred to in the body of the policy and conditions as "the assured" and "the insured." At the time of taking out the policy, and thereafter until her death, which was on March 4, 1895, she lived in Providence, Rhode Island. The bill of exceptions states that the plaintiff, who also then lived in Providence, took out the policy. The plaintiff was an aunt of Mrs. Carey, but she is not named as beneficiary or otherwise in the policy, though perhaps it is to be inferred that she paid the premiums. There can be little doubt that this policy was a Rhode Island contract; certainly it was not a Massachusetts contract.

At some time after June 18, 1894, the plaintiff moved to Fall River, in this Commonwealth ; and thereafter "the plaintiff told the defendant's office in Providence to transfer the policy to Fall River," and then the payments of premiums were made to the defendant's collector in Fall River for several weeks, until finally there was a lapse for non-payment of premiums. There is nothing to show that anything was done by the defendant or by the insured to transfer the policy to Fall River, or to make it a Massachusetts contract, except as above mentioned. After the policy had lapsed for non-payment of premiums, a written application for its revival, with the arrears of premiums, was presented to the defendant in Fall River by the plaintiff, who then lived there. This application was signed by Ann Bottomley, the plaintiff, and after describing the policy and giving the residence of Julia Carey as at Providence, Rhode Island, it says: "The above described policy having lapsed, and the undersigned, having forfeited all claims thereunder, hereby applies for a revival of insurance ; and, to induce the said company to revive the same, declares and warrants as follows." Certain declarations and warranties followed. Upon the back of this application, certain particulars inquired for were answered, and the answers were signed by Julia Carey. The application was dated at Fall River, January 19, 1895. The "full name of agent by whom policy was lapsed" was given as R. Hope, Providence. There are two certificates, one by "R. D. Hope, Agent," that he had

personally seen the life insured under the above policy, etc.; the other by R. D. Hope, that he had on January 25, 1895, "personally seen and examined the life proposed for insurance." Neither of these mentions the residence of R. D. Hope, nor the place where he saw Mrs. Carey. The policy was given with the above application to the defendant at its office in Fall River, and on or about February 4, 1895, at Fall River, was returned to the plaintiff, who then lived there, by the local representative of the defendant in that city, with the following stamped upon its face: "This policy having lapsed is herewith revived, Feb. 4, 1895, in accordance with and subject to the representations, agreements, and warranties in the written and printed application for its revival. Geo. B. Woodward, Secretary." The stamping upon the policy was apparently done at the defendant's home office in New York City. The application expressly recites that it must be done there in order to give force to the policy. There is nothing which in express terms shows at what place Mrs. Carey signed the answers to questions upon the application, and submitted to personal examination, though from the testimony as to her residence and her ill health it would seem, in the absence of anything to show the contrary, that it must have been in Providence.

The action is brought upon the policy which was certified to be revived in the manner and under the circumstances above set forth. The plaintiff objected to the admission of the application in evidence, and also to the admission of evidence to show the untruthfulness of statements therein, on the ground that neither the application nor a copy thereof had been attached to the policy; and the plaintiff requested the court to instruct the jury that it was not open to the defendant to prove that the statements in the application were untrue. The court, however, admitted the evidence, and refused to instruct the jury as requested; and the plaintiff excepted to the admission of the evidence, and to the refusals to rule as requested.

The bill of exceptions does not clearly show the ground on which the court placed its rulings and refusals; but if any finding of any matter of fact was involved therein, such finding must have been against the plaintiff.

The question which is presented to us is, whether it was the

duty of the court to rule that the policy as revived was subject to the laws of Massachusetts rather than to. the laws of Rhode Island.   If it was not subject to the laws of Massachusetts, then the statutes of Massachusetts which are relied on by the plaintiff would be immaterial.

It certainly was not necessary, as matter of law, to hold that the supposed revival had the effect to make the revived policy a Massachusetts contract.   Julia Carey still remained the only party contracting with the defendant.   The revived promise was a promise to her.   The facts that Ann Bottomley signed the application for revival, and that she conducted her part of the negotiations in Fall River, and paid the premiums, and received back the policy in that city, did not of themselves work a transfer of the place of the contract with Mrs. Carey to Massachusetts.   The original contract clearly was subject to the laws of Rhode Island, and the facts recited are not sufficient to show, as matter of law, that after the supposed revival the place of the contract was changed.   Not only was the assured a resident of Rhode Island, but the probable place of performance was also there.   Certainly it was so at the outset, and it was not known and during Mrs. Carey's life it could not be known that any person to whom payment of the policy might lawfully be made would at the time of Mrs. Carey's death be a resident of Massachusetts.   The place of performance will ordinarily be deemed to be the place of a contract, unless the parties intended otherwise.   *London Assurance* v. *Companhia de Moagens,* 167 U. S. 149, 160, 161.   *Coghlan* v. *South Carolina Railroad,* 142 U. S. 101.   *Hall* v. *Cordell,* 142 U. S. 116.   Dicey, Confl. Laws, 568, 570–572.   Story, Confl. Laws, § 280.

In *Metropolitan Ins. Co.* v. *McTaque,* 20 Vroom, 587, the situs of the policy, if revived, was not involved or determined.

If the contract was not governed by the law of Massachusetts, the provisions of statutes relied on by the plaintiff, St. 1893, c. 434, § 1, and St. 1887, c. 214, § 21, would of course have no application.   No similar statutes of Rhode Island have been put in evidence.   According to the common law, the revival of the policy never took effect, because one of the declarations or warranties contained in the application was untrue.   *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82.   *Gallant* v. *Metropolitan*

*Ins. Co.* 167 Mass. 79. *Sweeney* v. *Metropolitan Ins. Co.* 19 R. I. 171.

Being of opinion, for the above reasons, that the plaintiff's exceptions must be overruled, we do not consider the further grounds urged by the defendants, that the above statutes are not applicable to an application for a revival of a policy.

*Exceptions overruled.*