PHILIP KLEIN, Plaintiff, v. SUNBEAM CORPORATION, a corporation of the State of Illinois, Defendant.

486

(*November* 27, 1951.)

LAYTON, J., sitting.

*John Van Brunt, Jr.,* and *David Snellenburg* (of Killoran and Van Brunt), Attorneys for Plaintiff.

*David F. Anderson* (of Berl, Potter and Anderson), Attorney for Defendant.

Superior Court for New Castle County, No. 819, Civil Action, 1950.

488

LAYTON, J.:

██ The question here presented concerns due process of law and should be resolved in accordance with decisions of the Federal Courts. *Atlas Mut. Ben. Ass'n v. Portscheller,* 4 *Terry* 298, 46 *A.* 2d 643. To be distinguished are those numerous cases, both state and federal, involving the subject of the doing of business by a foreign corporation in violation of state statutes requiring the registration and qualification of such corporations as a condition precedent to engaging in business, for it is obvious that while an unlicensed corporation may be doing business to the extent of bringing it within the jurisdiction of a given forum, yet it might not have reached a status requiring its qualification under a registration statute of that same forum. *Liquid Veneer Corp. v. Smuckler,* 9 Cir., 90 *F.* 2d 196.

██ In general, it may be said that a foreign corporation becomes amenable to process to enforce a personal liability, in the absence of consent, when its business activities within a given state are of such an extent as to warrant the inference that it is present there. *Philadelphia & Reading R. R. Co. v. McKibbin,* 243 *U. S.* 264, 37 *S. Ct.* 280, 61 *L. Ed.* 710. An examination of the decisions of the Supreme Court of the United States indicates, however, that much confusion has resulted from the application of this general principle. See *Columbia Law Review,* Vol. 29, p. 187. For instance, in *Commercial Mutual Accident Co. v. Davis,* 213 *U. S.* 245, 29 *S. Ct.* 445, 53 *L. Ed.* 782, service

upon an agent of the defendant insurance company was upheld upon a little more than an isolated instance where, at plaintiff's request, the defendant sent its agent into a state for the purpose of examining and settling an accident claim, at which time defendant's agent was served with process. Except for the incident just related, the business of the company seems to have been confined to mere solicitation of insurance by its agents and, moreover, there was a substantial suspicion that the letter requesting defendant to send its agent into Missouri was a ruse to enable service to be made upon the company. On the other hand, in *Green v. Chicago, Burlington & Quincy R. R. Co.*, 205 *U. S.* 530, 27 *S. Ct.* 595, 51 *L. Ed.* 916, the defendant had for many years maintained an office in Pennsylvania staffed with full time agents who, though their work was largely confined to mere solicitation, nevertheless, in given cases had authority to sell tickets and transact business in connection with bills of lading. Despite this, the Supreme Court struck down as invalid the service of process upon this defendant upon the ground that its business activities in Pennsylvania amounted to no more than solicitation.

■ Between the wide diversity of views represented by the two opinions just noted, there remain literally dozens of pronouncements by the Supreme Court concerning the validity of service upon foreign corporations doing business within a state. Former Chief Justice Layton, after a critical analysis of a number of those decisions in the *Portscheller* case, *supra* [4 *Terry* 298, 46 *A.* 2d 647] summarized the state of the law on the question as follows:

"Corporate presence in a state as the basis of subjection to process rests, we think, upon the continuity and extent of business actually done within the state and not merely put in motion there. The word 'present,' as used in the pronouncement of the Supreme Court, is a cryptogram. It is used, not literally, but as suggestive of something else. Taken literally, it would admit of the argument that a corporation is required to defend any controversy arising out

of a transaction entered into where the suit was brought; but this would impose too severe a burden. There must be some continuity of business activity on the part of the corporation in the State of the forum, 'enough to demand a trial away from its home.' This is the important, if not controlling, consideration expressed shortly by the word 'presence,' but 'involving an estimate of the inconveniences which would result from requiring it to defend, where it has been sued.' The inquiry, then, is whether the extent and continuity of what it has done in the state in question makes it reasonable to bring it before one of its courts. *Hutchinson v. Chase & Gilbert, Inc., et al.,* 2 *Cir.,* 45 *F.* 2d 139. Implicit in the synthesis is the necessity for inquiry into the kind of business activity carried on by the corporation. The solicitation of business in a given state is, of course, a business activity of a kind. Such an act is preliminary to the doing of business. But, as a general proposition, the test is, not the solicitation of business merely, but whether the agent has authority to carry forward or to conclude business transactions in the state. *Peebles v. Chrysler Corporation, D. C.,* 57 *F.* 2d 867; *Hinchcliffe Motors, Inc., v. Willys-Overland Motors, supra,* 30 *F. Supp.* [580] at page 583."

My examination of these cases indicates that the Supreme Court has not yet gone so far as to hold that mere solicitation[1] regardless of volume, manifests corporate "presence" within a jurisdiction to the extent of satisfying the principles of due process of law in so far as concerns the service of process. *Peoples Tobacco Co. v. American Tobacco Co.,* 246 *U. S.* 79, 87, 38 *S. Ct.* 233, 62 *L. Ed.* 587. But solicitation in connection with other acts of doing business within a state have been almost universally recognized as a manifestation of corporate "presence" sufficient to uphold the validity of service. Thus, in *International Har-*

---

[1] By solicitation, I have in mind interstate commerce business done by way of the solicitation of orders by agents which are then mailed to the company's home office outside the state, filled and shipped directly to the vendee.

*vester Co. v. Kentucky*, 234 *U. S.* 579, 34 *S. Ct.* 944, 58 *L. Ed.* 1479, solicitation by defendant's agents in connection with their authority to receive payment in money, check or by note was held to be doing business to the extent of manifesting corporate "presence". Likewise, in *St. Louis Southwestern R. R. Co. of Texas v. Alexander*, 227 *U. S.* 218, 33 *S. Ct.* 245, 57 *L. Ed.* 486, the validity of service was sustained where the defendant, in addition to solicitation, maintained an office and a general agent with authority to settle claims. And there is an increasing tendency to uphold service of process in such cases where the suit in which the questioned service was made was a direct result of the business done by the foreign corporation in that forum. *International Shoe Co. v. Washington*, 326 *U. S.* 310, 66 *S. Ct.* 154, 90 *L. Ed.* 95. The "corporate presence" rule, based upon solicitation together with some additional evidence of doing business, is now sometimes referred to as the "solicitation plus" doctrine and in my reading of the cases it seems fairly apparent that more and more emphasis is being placed upon "solicitation" and less and less upon "plus".[2]

The *International Shoe* case, just cited, is the latest expression of the federal Supreme Court on this subject. It has been variously referred to as merely a review of authorities on the point; as an authority of limited application because of the peculiar facts; and as a decisive step forward toward the ultimate result that a continuous flow of business through solicitation should alone furnish a sufficient manifestation of corporate "presence" to uphold the validity of service upon a foreign corporation not otherwise present or consenting thereto. However the decision may be characterized, it is now generally regarded as the leading case and requires careful consideration.

---

[2]"And very little more than 'mere solicitation' is required to bring about this result", Rutledge, J., in *Frene v. Louisville Cement Co.*, 77 *U. S. App. D. C.* 129, 134 *F.* 2d 511, 515, 146 *A. L. R.* 926; "* * * due process requires only that * * * the (corporation) have certain minimum contacts with it (the state in which business is done) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Chief Justice Stone in *International Shoe Co. v. Washington, supra* [326 *U. S.* 310, 66 *S. Ct.* 158].

The suit grew out of a claim by the Unemployment Compensation Commission of the State of Washington against defendant for unemployment compensation contributions levied upon the earnings of defendant's salesmen in that state. Defendant was a Delaware corporation having its principal place of business in St. Louis. It sold its product, shoes, in great volume in Washington through a number of resident salesmen who solicited orders by sample, mailed in applications to the home office which were filled outside of the state and mailed directly to the customers. Defendant had no office in the state and made no contracts there. It maintained no stock of merchandise in the state and all deliveries were in interstate commerce. On occasions, the sales agents engaged rooms in business buildings for substantial periods of time or, temporarily, in hotels, for the exhibition of sample products, the rental for which was paid by defendant. The service of process was upheld by the Supreme Court. In this connection, Former Chief Justice Stone, in reviewing a large number of Supreme Court decisions on the subject, took occasion to state:

> "But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' (Authorities cited.)

> "Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, *Klein v. Board of Tax Supervisors,* 282 *U. S.* 19, 24, 51 *S. Ct.* 15, 16, 75 *L. Ed.* 140, 73 *A. L. R.* 679, it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or

the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in *Hutchinson v. Chase & Gilbert,* 2 *Cir.,* 45 *F.* 2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in.this connection. (Authority cited.)

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. (Authorities cited.)

\* \* \* \* \* \*

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little 'more or a little less. (Authorities cited.)

\* \* \* \* \* \*

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large

volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations established sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure. * * *"

I now turn to an examination of the business activities of the defendant here in the light of the authorities above reviewed. These resolve themselves into five main groups or headings. (1) The active and continuous business of the defendant in this state through solicitation over a number of years. (2) The shipment into this state by the defendant of a substantial inventory of electrical appliances from which sales and deliveries were made to local retailers. (3) A persistent course of supervising and "policing" its wholesalers and retailers in connection with the promotion of sales and the maintenance of its price structures. (4) A suit brought by it against this plaintiff, then one of its retailers, because of his alleged violations of the Delaware Fair Trade Act. (5) The fact that the present suit is an outgrowth of defendant's business activities in this state.

It is apparent that the amount of business consummated by defendant here was not of the same volume as in the *International Shoe Co.* case. Nor did the number of salesmen (one part time agent) compare with the number of agents maintained by that company in the state of Washington. On the other hand, Sunbeam has done a steady and continuing business here for a number of years and, obviously, Delaware is a very small state compared with Washington. Therefore, it would be expected that the volume of business done by the average company in

Delaware would be considerably less than in a state nearly ten times greater in population. I am inclined to feel that, relatively speaking, this defendant has engaged in interstate sales activities in Delaware with some persistence and in substantial volume over the course of a number of years.

 Admittedly, it entered into one outright act of doing business in connection with a sales promotional campaign here in 1950. Prior to the visit by defendant's agents in this connection, defendant caused to be shipped into this state some $10,000 of its electrical appliances which were stored in a warehouse in Wilmington on the order of one of its wholesalers, the storage costs and insurance thereon being paid by defendant. Two of its agents, one a vice-president, came into Delaware, the latter staying only one night, but the former presumably several days. During the course of this campaign, these agents interviewed all wholesalers and retailers, gave a luncheon for the wholesalers and consummated many sales to retailers, deliveries being made (over a period of about four weeks) directly out of the stock shipped into Delaware. Defendant's counsel necessarily concedes that this was an isolated but obvious act of business on its part, although he points out that this event occurred after this suit was filed and insists that the occurrence should be excluded from these considerations. However, no authority for this proposition is cited and I have determined that since the service in this action was made upon the vice-president at the time he was present in connection with the promotional campaign itself, this incident should be viewed as an act of business material to this issue.

 Counsel are in sharp dispute concerning the effect of defendant's supervisory and so called "policing" activities which were carried on here rather persistently. It appears that on a number of occasions defendant's agents (not its solicitor) came into Delaware and conferred with its wholesalers and retailers regarding wholesale and retail prices and price structures, frequently warned its local wholesalers and retailers against price violations and once, through an agent, visited this plaintiff and

left a letter warning him against such violations; that agents have received and considered complaints from its local dealers concerning price violations and on one occasion revoked a distributorship for this reason; that on other occasions agents visited local retailers in order to promote Sunbeam sales, advised them on methods of displaying its goods and at times have planned, financed and presided at meetings of Delaware dealers and distributors in Delaware. On three occasions defendant retained shopping "spys" to come into Delaware with funds furnished by it in order to ascertain whether or not its products were being sold at proper prices. Finally, as a result of information obtained by these "policing" methods, defendant brought the above mentioned action against this plaintiff under the Delaware Fair Trade Act. Defendant insists that these activities just recited were so integrally related with its purely interstate business that no emphasis should be placed on them. Plaintiff maintains that they constituted acts of business. I feel that the answer lies somewhere in between these views. Defendant could have carried on its business here and elsewhere, though perhaps not so effectively, by the method of pure solicitation of orders by salesmen having no authority whatever other than to solicit orders and mail the applications into the home office where they would be accepted or rejected and, if accepted, filled and mailed directly over state lines to the purchaser. Under such circumstances, defendant could maintain absolute control of its selling procedures and price schedules at its home office. However, it elected to adopt a perhaps more profitable form of interstate business through the medium of wholesalers and retailers in the various states. Thus, in a large measure, its control of its selling methods and maintenance of price schedules passed out of its immediate hands into those of wholesalers and retailers. Consequently, it became necessary, in order to preserve these controls, to come into Delaware with some frequency in order to advise, assist and supervise the sales activities and to "police" its price structures. True, these activities were in connection with an interstate commerce business and, concededly, such contacts were not directly with the Delaware purchasing public. Nevertheless,

they were a direct consequence of defendant's election to maintain its activities in Delaware through wholesale and retail outlets. They bore directly upon the manner in which it did business, defendant benefitted therefrom and I am inclined to treat them as a form of manifestation of defendant's corporate "presence" in this state. Some support for this conclusion is to be found in *LaPorte Heinekamp Motor Co. v. Ford Motor Co., D. C.,* 24 *F.* 2d 861. There, service of process by plaintiff against defendant was upheld on the corporate "presence" theory where the evidence of doing business by defendant was substantially related to its very rigid supervisory tactics over the manner in which its distributors did business. This was a contract action by a distributor against defendant for revoking its franchise and for failure to account for a large inventory of defendant's products then on hand, which, because of the revocation of its franchise, became valueless. Defendant had no office in Maryland and, as here, was engaged purely in interstate commerce, selling its automobiles and parts through the medium of distributors in the various states. It had a traveling representative who supervised the business of its distributors throughout Maryland, Delaware and Virginia. While not a resident of Maryland, he spent a large part of his time there in connection with sales promotional work and in supervising the manner in which the distributors carried on their business of selling defendant's automobiles. On occasions, he also accepted certain payments by check or note and generally exercised a more rigid supervision over sales activities, than evidenced by the facts of the case at bar. Although Judge Soper laid much stress upon the agent's authority to collect and accept payments, yet he regarded the supervisory tactics as independent evidence of doing business.

Next, it is urged that defendant's action against this plaintiff under the Fair Trade Act of this state constituted an act of business. I am inclined to accord this little weight, except to the extent already mentioned that this suit, among other things, was illustrative of the rather continuous supervisory and "policing" methods exercised by defendant in this state.

Finally, it is contended that this suit arose in connection with defendant's business activities in Delaware which, under the authorities, is of itself sufficient to give validity to the process here under attack. Unlike the *International Shoe Co.* case, this cause of action was not a direct outgrowth of defendant's activities in Delaware. On the other hand, it should not be dismissed from these considerations for it clearly arose from defendant's efforts to exercise a close measure of supervision and control over the manner in which its products were sold here. If I am correct, and I think I am, in regarding defendant's "policing" tactics as a manifestation of its "presence" in this jurisdiction, then it must necessarily follow that an alleged tort committed by defendant in Delaware in connection therewith is also material to this issue. Clearly, Judge Soper so thought in the *Ford Motor Co.* case, above discussed, where the cause of action was also by a distributor against the company.

In conclusion, then, there are presented here a number of instances of acts of business on the part of the Sunbeam corporation in this state. There is the relatively large and continuous volume of interstate business done in Delaware over a long period; a persistent supervision by defendant's agents in their effort to promote and stimulate sales as well as the constant "policing" methods employed in order to maintain price structures; substantial sales and deliveries made directly from inventory stored in this state for a short period of time and the fact that, in a manner of speaking, this very suit resulted from defendant's efforts to control the prices at which its goods were sold here. No one of these things is conclusive in itself but, when added together and viewed as a whole, they demonstrate a fairly systematic and continuous pattern of business activity over a substantial period of time sufficient in my judgment, to establish defendant's "presence" in Delaware within the meaning of the federal authorities previously noted. In the words of Chief Justice Stone in the *International Shoe Co.* case [326 *U. S.* 310, 66 *S. Ct.* 160], these business activities on the part of this defendant evidence "* * * sufficient contacts or ties with the state of the

forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which (Sunbeam) has incurred (here)."

The motion to quash service is denied.