**STATE of Maine**

**v.**

**Thomas W. SIMPSON.**

Supreme Judicial Court of Maine.

April 16, 1971.

Peter T. Dawson, Peter W. Culley, Asst. Attys. Gen., Augusta, for plaintiff.

Franklin F. Stearns, Jr., George Milliken, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The Defendant was indicted, tried and convicted of murder, from which conviction he seasonably appealed. The Points of Appeal raise four issues: 1) The refusal of the Presiding Justice to grant a motion for judgment of acquittal; 2) The verdict is contrary to the weight of the evidence; 3) The verdict is not supported by substantial evidence; 4) The Court erred in giving the following instructions to the Jury:

"Now, the fact that the crime of robbery was in process of being committed, or was actually consummated, is of no consequence as to Mr. Simpson unless at the time of Mr. Hider's death you are satisfied that Mr. Simpson, the Defendant in this case, was at that time still actively assisting, encouraging or aiding or making himself available for assistance either in the further prosecution of the robbery or in the efforts *to complete the robbery by assisting in the escape*, he having participated previously with that intention in mind." (emphasis added)

A summary of the ultimate facts follows.

On February 17, 1969, a South Portland merchant, one Samuel Hider, was shot and killed in his variety store by one Robert E. Westberry. At the precise moment of this homicide the Jury could have believed, from the testimony, that the Defendant was standing on the sidewalk in the vicinity of the front entrance to the Hider store, having walked there with Westberry from a car, parked a short distance away. It was the State's theory that the Defendant was an active participant in the planned robbery of Mr. Hider and, therefore, was as guilty of murder as was Westberry, who had, previous to this trial, been convicted of this homicide on a separate indictment.

Previously in the evening of the day of the homicide, the Defendant and two companions, Wayne Dow and Richard Morgan, had been drinking and "riding around" in the Morgan car. They met Westberry, with whom they had a prior acquaintance, and he joined them. The drinking continued and the record justifies the inference that the four men, by collective discussion, decided to "pull a job". It was determined that this should be done at Hider's store. They obtained a sawed-off shotgun and, thus armed, stopped the vehicle in the vicinity of the store, at which time the Defendant and Westberry were in the back seat. The weapon was passed from the front seat to the back and taken by Westberry, previous to which the Defendant had said, "I'll take it." The Defendant and Westberry then proceeded to get out of the car and walk in the direction of the front door of the store. As they approached the front door, one Leonard Larain came out and entered his car, which was directly in front of the store. He recalled seeing the two men and testified that it appeared to him that they were passing something back and forth. Westberry "had a silk stocking on the top of his head rolled up, which made him look rather odd." He said that the Defendant was standing by the corner of the store, that he kept his head down and appeared to turn away from Mr. Larain. However, he made no move to leave the vicinity. Mr. Larain got into his car and started to drive away, and just as he did, he heard a loud "pop".

Mr. Westberry testified that, as they stood near the store door, the Defendant said, "Let's go, let's go" and when he, Westberry, entered the store he thought the Defendant was behind him, interpreting the statement as an encouragement to proceed. As he entered the store, Mr. Hider was standing near the cash register. Mr. Hider apparently saw the gun, reached for it, and the gun exploded, the shot damaging Mr. Hider's left hand and entering his abdomen in the left inguinal area, causing his death. After the shot was fired, and Mr. Hider had fallen to the floor, Westberry took approximately One Hundred Eighty Dollars ($180.00) in bills from the cash register and returned to the car. He testified that as he came out of the store to go to the car the Defendant was just entering the car. They then drove to the dock area where the shotgun was thrown into the ocean, after which the four men separated.

The Defendant ultimately was arrested and gave a statement to the police in which he took the position that he was not actively participating in the robbery but went along with Westberry to the store for the purpose of preventing any harm from befalling Mr. Hider. He said that although he was aware of the plan to rob the Hider store and aware of the presence of the sawed-off shotgun, his purpose in going with Westberry was to "stop him from hurting the guy".

There were certain inconsistencies between the testimony of Westberry and that of the Defendant, who elected to be a witness. For example, the Defendant in his statement said that he returned to the car and was there "about five minutes" before Westberry returned. Westberry, on the other hand, testified that when he emerged from the store, having shot Mr. Hider and taken the money, he observed the Defend-

ant just then entering the car. Westberry denied that the Defendant ever made any effort to discourage him from carrying out the planned robbery, although the Defendant had testified that he had tried to talk him out of it. It should also be noted from the testimony of the Defendant himself, that when he left the car to go with Westberry to the store, his avowed purpose in so doing was not to prevent Westberry from committing a robbery, but to prevent injury to the storekeeper.

The Jury could have placed great faith in the testimony of Mr. Larain, whose testimony would negate any attempt on the part of the Defendant to leave the scene, and support an inference that the Defendant attempted to conceal his identity from him. He, also, placed the Defendant in front of the store when he heard the "pop", which was contrary to the Defendant's testimony.

■ A careful review of the complete record indicates a factual basis for belief beyond a reasonable doubt by the Jury that the Defendant was an active participant in a felonious undertaking from which death ensued. We are satisfied that not only is there substantial evidence to support the verdict, but also the Jury was justified in finding beyond a reasonable doubt that the Defendant was guilty of murder.

"A person who engages with others in the commission of an unlawful act is criminally responsible for everything done by his confederates which follows incidentally in the execution of the common design as one of its probable and natural consequences." State v. Cummings (Hawaii 1967) [49 Haw. 522] 423 P.2d 438. See, also, State v. Berube (1962) 158 Me. 433, 185 A.2d 900.

"A person who encourages the commission of an unlawful act cannot escape responsibility by quietly withdrawing from the scene. The influence and effect of his encouragement continue until he renounces the common purpose and makes it plain to the others that he has done so and that he does not intend to participate further." 21 Am.Jur.2d Criminal Law Section 120.

Applying these standards to the testimony in this case, the Presiding Justice was entirely correct in refusing to grant a motion for judgment of acquittal.

■ The other matter for consideration arises from the claimed error in the quoted instructions to the Jury. We note a complete failure to comply with the provisions of M.R.Crim.P. Rule 30(b). This alone is ample authority to overrule this objection. State v. Boisvert (Me.1967) 236 A.2d 419.

The standards under which the Court may review questions of law involving instructions to the Jury where no objections have been taken are limited and the rule is stated in State v. Smith, 140 Me. 255 at 285, 37 A.2d 246 at 259:

"Such review, however, is not compatible with the best practice, and although there be error in an instruction, when no exception is taken, a new trial either on appeal or motion should not be granted unless, * * * 'error in law * * * was highly prejudicial * * * and well calculated to result in injustice,' or 'injustice would otherwise inevitably result,' or 'the instruction was so plainly wrong and the point involved so vital * * * that the verdict must have been based upon a misconception of the law,' or 'When it is apparent from a review of all the record that a party has not had that impartial trial to which under the law he is entitled * * *.'" See, also, State v. Hudon (1947) 142 Me. 337, 52 A.2d 520.

Being aware of this mandate and despite the failure of the Defendant to comply with Rule 30(b), supra, we have read the charge of the Justice below, bearing in mind that the correctness of a charge is to be determined from its entirety and not from isolated extracts therefrom. State v.

Berube, supra; Desmond v. Wilson (1948) 143 Me. 262, 60 A.2d 782.

The Defendant's objection to the emphasized clause in the charge was based on his theory that the instruction was applicable to one charged with being an accessory after the fact.

■ We conclude that the charge was complete, accurate and could lead the Jury to no misunderstanding of the State's burden of proving beyond a reasonable doubt that the Defendant was an active participant in the robbery at the time of the fatal shooting of Mr. Hider. On no less than fifteen occasions during the charge, the Jury was reminded of the absolute necessity of active participation in the robbery by the Defendant at the critical moment of death. In fact, by adding to the excerpt objected to the next ensuing sentence, "In addition, you must be satisfied beyond a reasonable doubt, once you are satisfied, if you are, that the robbery was something in which Mr. Simpson was participating at the time of his death, that it was the robbery which was the cause of Mr. Hider's death.", it becomes apparent that the instruction in its entirety is a correct statement of the law. State v. Berube, supra. It is obvious that actual, or constructive, presence at the scene of a crime during its commission for the purpose of assisting the perpetrator in his escape, all by pre-arrangement, is not descriptive of being only an accessory after the fact. Rather, such conduct meets the legal requirements necessary to establish participation as a principal offender. Commonwealth v. Lowry (1953) 374 Pa. 594, 93 A.2d 733.[1] White v. State (1950) 154 Tex.Cr.R. 489, 228 S. W.2d 165.[2] There is no merit, even if Rule 30(b), supra, had been complied with, in the objection to the charge.

The entry is

Appeal denied.

WERNICK, J., did not sit.

---

1. "Where a killing occurs in the course of a robbery, all who participate in the robbery including the driver of the get-away car are equally guilty of murder in the first degree even though some one other than the defendant fired the fatal shot."

2. As a result of a previously formed design, the Defendant waited some distance from the scene of the robbery during which murder was committed, and assisted the killer in his escape. It was said in *White* that the Defendant was present at the commission of the offense in the sense that the word is used in defining principals. "It was not necessary that he be in immediate contact with (the killer), or be so situated at the time as to make him an eye or ear witness. He was present in the sense of being immediately at hand, and in the performance of his part of the planned unlawful act, a reasonable consequence of which was the murder of the victim."